# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | | |
|---|---|---|
| MARIA MENDEZ, | ) | No. CV 06-888-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 15, 2006, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 2, 2006, and April 28, 2006.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 8, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

**BACKGROUND**

Plaintiff was born on January 25, 1957. [Administrative Record ("AR") at 50.] She attended school through the sixth grade in Mexico.  [AR at 463-64.] Plaintiff's work history includes past relevant work as a custodian.  [AR at 68, 464.]

On May 12, 2003, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments, in which she alleged that she has been unable to work since June 8, 1999. [AR at 50-52, 442-44.] After her applications were denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on June 24, 2004, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 461-75.]   On December 16, 2004, the ALJ determined that plaintiff was not disabled because she retains the ability to perform the full range of light work.[1]  [AR at 20-30.]  When the Appeals Council denied review on December 22, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 6-11.]

III.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  <u>Moncada</u>, 60 F.3d at 523; <u>see also</u> <u>Drouin</u>, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's

---

[1]   Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

2

1  decision, the Court examines the administrative record as a whole, considering adverse as well

2  as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

3  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

4  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

5  53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

6

7                                                    **IV.**

8                               **THE EVALUATION OF DISABILITY**

9         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

10  to engage in any substantial gainful activity owing to a physical or mental impairment that is

11  expected to result in death or which has lasted or is expected to last for a continuous period of at

12  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

13

14  **A.     THE FIVE-STEP EVALUATION PROCESS**

15         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

16  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

17  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

18  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

19  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

20  substantial gainful activity, the second step requires the Commissioner to determine whether the

21  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

22  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

23  If the claimant has a "severe" impairment or combination of impairments, the third step requires

24  the Commissioner to determine whether the impairment or combination of impairments meets or

25  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

26  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

27  If the claimant's impairment or combination of impairments does not meet or equal an impairment

28  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

1  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
2  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform
3  past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie
4  case of disability is established.  The Commissioner then bears the burden of establishing that the
5  claimant is not disabled, because she can perform other substantial gainful work available in the
6  national economy.   The determination of this issue comprises the fifth and final step in the
7  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
8  at 1257.

9

10  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

11        In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial
12  work activity since her alleged onset date of disability.  [AR at 21, 29.]  At step two, the ALJ
13  concluded that plaintiff has the severe impairment of degenerative disc disease of the lumbar
14  spine.[2]  [AR at 22, 29.]  At step three, the ALJ found that plaintiff's impairment does not meet or
15  equal the requirements of any of the impairments in the Listings.  [Id.] The ALJ further determined
16  that plaintiff retains the residual functional capacity[3] to perform light work.  [AR at 27, 29.]  At step
17  four, the ALJ determined that plaintiff is not able to perform her past relevant work.  [AR at 28, 29.]
18  At step five, the ALJ determined that because plaintiff can perform the full range of light work, she
19  is not under a "disability" as defined in the Social Security Act. [AR at 28-30.]

20

21                                          **V.**

22                               **THE ALJ'S DECISION**

23        Plaintiff contends the following: (1)  the ALJ incorrectly concluded that plaintiff does not
24  have a severe mental impairment; (2) the ALJ incorrectly asserted that plaintiff has no neurological

25  _____

26  [2]    The ALJ further found that plaintiff does not have a severe mental impairment. [AR at 22.]

27  [3]    Residual functional capacity ("RFC") is what a claimant can still do despite existing
28  exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir.
    1989).

                                          4

1   abnormalities; (3) the ALJ incorrectly asserted that the record contained no opinions from treating

2   or examining physicians indicating plaintiff is disabled; (4) the ALJ improperly weighed plaintiff's

3   testimony; and (5) the ALJ was required to take testimony from a vocational expert ("VE").  Joint

4   Stipulation ("Joint Stip.") at 3.  The Court agrees that the ALJ erred in assessing plaintiff's

5   credibility, and remands the matter for further proceedings.

6

7   **THE ALJ'S DETERMINATION OF PLAINTIFF'S CREDIBILITY**

8         Plaintiff testified that her impairment causes constant pain in her lower back; that she

9   experiences numbness and tingling in her left leg; that the pain is exacerbated when she performs

10  physical activity and she must lie down frequently to alleviate the pain; that she cannot stand, walk

11  or sit for prolonged periods; and that she is only able to sleep for three to four hours a night.  [See

12  AR at 464-72.]  In the decision, the ALJ considered plaintiff's subjective complaints and largely

13  discounted her allegations regarding the severity of her symptoms.[4] [AR at 26-27.] Plaintiff asserts

14  that the ALJ failed to provide clear and convincing reasons for rejecting her testimony.  See Joint

15  Stip. at 15.

16        Because plaintiff produced medical evidence of the underlying impairment that is

17  reasonably likely to cause the alleged symptoms, medical findings are not required to support the

18  alleged severity of pain or other symptoms.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991);

19  see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant

20  need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that

21  the claimant lacks credibility cannot be premised wholly on a lack of medical support for the

22  severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to

23  subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3

24  (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside

25  pain.").

26  _____

27      [4]   At the same time, the ALJ did state that plaintiff's "complaints of pain have been noted and
    considered, and the residual functional capacity ... does include limitations which show that
28  [plaintiff's] allegations have not been totally disregarded or rejected."  [AR at 27.]

1   The ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or
2   (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030,
3   1040 (9th Cir. 2003).   The ALJ may consider the following factors in weighing a plaintiff's
4   credibility:  (1) her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony
5   or between the plaintiff's testimony and her conduct; (3) her daily activities; (4) her work record;
6   and (5) testimony from physicians and third parties concerning the nature, severity, and effect of
7   the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002);
8   see also 20 C.F.R. §§ 404.1529(c), 416.929(c); Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir.
9   1989) ("if, despite his claims of pain, a claimant is able to perform household chores and other
10  activities that involve many of the same physical tasks as a particular type of job, it would not be
11  farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from
12  working."). Moreover, "[g]eneral findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722
13  (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that
14  undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the
15  ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528,
16  532 (9th Cir. 1986).

17       Here, because the ALJ found no evidence of malingering, the reasons for rejecting plaintiff's
18  credibility must be clear and convincing. Benton, 331 F.3d at 1040. As explained below, the Court
19  concludes that the ALJ erred by offering reasons that failed to meet this standard.

20       The ALJ discredited plaintiff's allegations in part on the basis that her "described daily
21  activities ... are not limited to the extent one would expect for a totally disabled individual" and that
22  instead her activities are consistent with work at the light exertional level.  [AR at 27.]  In support
23  of this conclusion, the ALJ pointed out that plaintiff cooks for her family and "has been able to take
24  care of a young child which can be quite demanding both physically and emotionally."  [Id.]  The
25  ALJ also highlighted the fact that plaintiff is able to take public transportation unassisted, and that
26  evidence in the record indicates that she attends school for interior decoration.  [Id.]

27       In general, if a claimant has the ability to perform activities "that involve many of the same
28  physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the

6

1  claimant's pain does not prevent [him] from working." See Fair, 885 F.2d at 603.  Engaging in

2  some chores or activities, however, is not necessarily inconsistent with a finding of disability. See

3  Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984); see also Cooper v. Bowen, 815 F.2d 557,

4  561 (9th Cir. 1987) (stating that ability to assist with some household tasks was not determinative

5  of disability) (citing Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981) (disability claimant need

6  not "vegetate in a dark room excluded from all forms of human and social activity")). Rather, an

7  ability to take part in some household tasks bears on a claimant's credibility only to the extent that

8  the level of activity is in fact inconsistent with the alleged limitations.  See Reddick, 157 F.3d at

9  722.  The Ninth Circuit has held that the ALJ may reject a claimant's symptom testimony if he "is

10 able to spend a substantial part of [his] day performing household chores or other activities that

11 are transferable to a work setting." Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).

12        The Court is not persuaded that the activities noted by the ALJ necessarily undermine

13 plaintiff's subjective complaints.  While plaintiff is able to cook meals, she indicates in the Daily

14 Activities Questionnaire that she must take breaks while working in the home.  [AR at 82; see also

15 AR at 471-72 (plaintiff testified that she is able to cook for herself, but must sit down when she is

16 tired).]  Nor does the fact that plaintiff uses public transportation serve as a strong indicator of her

17 ability to work, or establish that her complaints of pain and leg numbness are not credible. The ALJ

18 does not explain how these seemingly minimal activities relate to the rigors of the typical work

19 setting.[5]  See Fair, 885 F.2d at 603 (certain activities "are not easily transferable to what may be

20 the more grueling environment of the workplace, where it might be impossible to periodically

21 rest...").  As for plaintiff's attendance at an interior design school, there is no indication in the

22 record how long the course lasted, or how often and for what duration the class met.  Overall, the

23 ALJ made no finding that plaintiff spends "a substantial part" of her day performing household or

24 other activities, such as going to school, and provided insufficient explanation as to how plaintiff's

25 testimony describing her low level of activity is inconsistent with her claimed limitations.  See id.

26 _____

27        [5]    The Court notes that the ALJ, in summarizing plaintiff's complaints, mistakenly asserted that
   plaintiff takes out the trash. [AR at 27.]  Plaintiff testified at the hearing that her family members
28 perform this task.  [AR at 472.]

1   In any event, plaintiff should not be penalized for attempting to continue some normal practices.

2   See Reddick, 157 F.3d at 722 (disability plaintiffs should not be penalized for attempting to lead

3   normal lives despite their limitations).  As such, plaintiff's activities relied upon by the ALJ do not

4   amount to clear and convincing reasons for rejecting her credibility.

5       The Court notes that the ALJ states in the decision that plaintiff is accomplishing the

6   "physically and emotionally" demanding task of raising "a young child." The record gives no

7   indication of the extent of plaintiff's child rearing activities.  At the hearing, plaintiff testified that she

8   has four children, ages 24, 21, 19, and 8 years.  [AR at 464.]  The ALJ did not question plaintiff

9   further with respect to what physical tasks are associated with taking care of her children, whether

10  she is able to meet the demands of taking care of the eight year old, or whether, for example, her

11  older children help out with their youngest sibling.  While it may be the case that plaintiff performs

12  substantial childcare activities, there is no descriptive evidence of this in the present record.  As

13  such, the Court cannot find that the ALJ's speculation in this area is a convincing reason on which

14  to base the unfavorable credibility determination.

15      The ALJ also premised the credibility rejection in part on the fact that plaintiff has no

16  significant disuse muscle atrophy and that "all the medical examinations consistently show that

17  [she] has no neurological abnormalities.  She has normal strength in all her extremities as well as

18  intact sensation and reflexes." [AR at 27.]  Plaintiff correctly points out that, contrary to the ALJ's

19  assertion, there is ample evidence in the record of neurological abnormalities.  [See AR at 117

20  (sensation decreased in left L4, L5, and S1 distribution); 332 (sensory examination shows

21  decreased sensation to pinprick in the lower left leg); 338 (pin sensation test shows left L5 and S1

22  sensory deficit); 436 (showing uniformly decreased perception to pinprick throughout all lower limb

23  dermatomes on the left); 440 (abnormal EMG and NCS studies, indicating bilateral nerve root

24  impingement at L4 and L5).]   Thus, in dismissing plaintiff's testimony, it appears the ALJ

25  impermissibly ignored substantial medical evidence that substantiates plaintiff's complaint of leg

26  numbness.  See Gallant, 753 F.2d at 1456 (error for an ALJ to ignore the competent evidence in

27  the record in order to justify his conclusion).  Moreover, while it is correct that the medical record

28  shows no disuse muscle atrophy, at the same time plaintiff has not alleged that she is immobilized

1    or bed-ridden by her condition.  Rather, she claims that she must take frequent breaks and cannot

2    stand, sit, or walk for prolonged periods due to pain and numbness.  Given plaintiff's claims, the

3    Court is not convinced that the lack of disuse muscle atrophy is sufficient to discredit her

4    credibility.

5          For the foregoing reasons, the ALJ is directed to reevaluate plaintiff's subjective claims.

6    In addition to the issues addressed above, the Court observes that the ALJ did not address with

7    adequate specificity several of plaintiff's allegations, such as her claim that she has sleep

8    difficulties, that she needs to rest frequently when doing any physical activity, and that she is not

9    able to sit, stand, or walk for prolonged periods of time.  Upon remand, the ALJ is directed to

10   consider these pertinent allegations and, if appropriate, identify the specific evidence that negates

11   the alleged severity of these particular complaints.  Reddick, 157 F.3d at 722.  When considering

12   plaintiff's credibility, the ALJ is further directed to evaluate plaintiff's complaints pertaining to her

13   alleged mental impairment and determine whether any nonexertional limitations are appropriate.

14   Because the result of this determination may impact other steps in the sequential analysis, such

15   as the formulation of the RFC, plaintiff's remaining claims will not be addressed at this time.

16

17                                               **VI.**

18                        **REMAND FOR FURTHER PROCEEDINGS**

19         As a general rule, remand is warranted where additional administrative proceedings could

20   remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

21   Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

22   In this case, remand is appropriate to further assess plaintiff's credibility.[6]

23         Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

24   /

25   /

26

27   _____

28         [6]   In light of the Court's remand order, the Court does not address plaintiff's remaining
     contentions of error.

                                                9

1  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

2  for further proceedings consistent with this Memorandum Opinion.

3

4  DATED: January 31, 2007                         _____/S/_____

5                                                  PAUL L. ABRAMS
                                                    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28